IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

vs.                          Case Nos.:   5:08cr40/RH/GRJ
                                          5:15cv56/RH/GRJ

CHRISTOPHER SHAUN LAMAR

---

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Petitioner's "Motion under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in
Federal Custody" and Memorandum of Law in Support thereof (ECF Nos.
85, 86) and the Government's response thereto.   (ECF No. 90).   More
than two years after the deadline for filing his reply, Petitioner filed a
Supplemental Appendix in support of his § 2255 motion, (ECF No. 94), and
the Government filed the affidavit of Petitioner's former defense counsel
Walter B. Smith, Esq.   (ECF No. 95.)   The case was referred to the
undersigned for the issuance of all preliminary orders and any
recommendations to the district court regarding dispositive matters.   *See*
N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P.
72(b).   After a review of the record and the arguments presented, the
Court concludes that Petitioner has not raised any issue requiring an

evidentiary hearing and that the § 2255 motion should be denied.   *See*

Rules 8(a) and (b) Governing Section 2255 Cases.

## I.  BACKGROUND

On November 5, 2008, a grand jury charged Petitioner in a two count

indictment with conspiracy to distribute and possess with intent to distribute

fifty (50) grams of a mixture and substance containing cocaine base, more

than five (5) kilograms of a mixture and substance containing cocaine, and

an indeterminate amount of marijuana in violation of 21 U.S.C. §§

841(b)(1)(A)(ii), 841 (B)(1)(A)(iii) and 841(D) ("Count One") and possession

with intent to distribute more than five hundred (500) grams of a mixture

and substance containing cocaine and more than fifty (50) grams of a

mixture and substance containing cocaine base on a date certain in

violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A)(iii) and 841(b)(1)(B)(ii) and 18

U.S.C. § 2 ("Count Two").   (ECF No. 1.)   Although an arrest warrant was

issued in November of 2008, the Petitioner was not arrested until May 15,

2012.   (ECF Nos. 7, 10.)   Attorney Walter Brooks Smith, who was

appointed to represent Petitioner, moved to dismiss the indictment on the

ground that his client's right to a speedy trial had been violated due to the

Case Nos.: 5:08cr40/RH/GRJ; 5:15cv56/RH/GRJ

delay between his indictment and arrest.    (ECF Nos. 20, 21.)    The court

denied the motion after a hearing.    (ECF No. 29.)

　　　The Government filed an Information and Notice of Intent advising of

its intent to seek enhanced penalties due to Petitioner's prior controlled

substance conviction.    (ECF No. 31.)    The following week, Petitioner

proceeded to trial    After a two day jury trial, the jury convicted Petitioner as

charged, and found that the offense conduct involved fifty (50) or more

grams of cocaine base, five (5) kilograms or more of cocaine and an

unspecified amount of marijuana, as charged in the indictment.    (ECF No.

46.)

　　　The Final Presentence Investigation Report ("PSR") reflected that

Petitioner had a base offense level of 34, and he received two level

adjustments for possession of a firearm by a coconspirator and obstruction

of justice.    (ECF No. 52, PSR ¶¶ 26, 27, 30.)    His total offense level was

38.    (*Id.*, PSR ¶ 31.)    Petitioner's criminal history category was III.    (*Id.,*

PSR ¶¶ 39-41.)    The applicable guidelines range was 292 to 365 months.

However, the court sustained the defense objection to the obstruction

adjustment at sentencing and the applicable guidelines range became 240

to 293 months due to the statutory mandatory minimum.    (ECF No. 65 at

16, 28-29.)    When given the opportunity to allocute, Defendant told the

court that his counsel had been ineffective because he had shown little

interest in having a fair trial.    (ECF No. 65 at 19.)    Defendant told the

court that the Government's case was not based on physical evidence or

phone taps, but just hearsay and he requested that the court grant an

acquittal.    (ECF No. 65 at 19-22).    The court sentenced Defendant at the

high end of that range to a term of 293 months' imprisonment followed by

ten years of supervised release.    (ECF Nos. 55, 56, 65.)

Defendant appealed the district court's denial of his motion to dismiss

the indictment, claiming that this violated his Sixth Amendment right to a

speedy trial.    The Eleventh Circuit affirmed, finding that Defendant had

not attempted to assert his speedy trial right until after his arrest, that he

had attempted to evade detection and that any Government negligence in

creating the delay in prosecution was minimal, if it existed at all.    (ECF No.

80.)

## II.  ANALYSIS

### A. General Legal Standard

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.    A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"    *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).    The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   *Nyhuis*, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.   *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190,

Case Nos.: 5:08cr40/RH/GRJ; 5:15cv56/RH/GRJ

1195 (11th Cir. 2011).    An issue is "'available' on direct appeal when its

merits can be reviewed without further factual development."    *Lynn*, 365

F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055).    Absent a showing that

the ground of error was unavailable on direct appeal, a court may not

consider the ground in a section 2255 motion unless the defendant

establishes (1) cause for not raising the ground on direct appeal, and (2)

actual prejudice resulting from the alleged error, that is, alternatively, that

he is "actually innocent."    *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at

622 (citations omitted).    To show cause for procedural default, a defendant

must show that "some objective factor external to the defense prevented

[him] or his counsel from raising his claims on direct appeal and that this

factor cannot be fairly attributable to [defendant's] own conduct."    *Lynn*,

365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel

can constitute cause.    *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable

on direct appeal and are properly raised by a § 2255 motion regardless of

whether they could have been brought on direct appeal.    *Massaro v.*

*United States*, 538 U.S. 500, 503 (2003); *see also United States v.*

*Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016).    In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.    *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."    *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007).    Reviewing courts are to examine counsel's performance in a

highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").   Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.  *Strickland*, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."  *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315.   "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."  *Chandler*, 218 F.3d at 1314.   When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  *Chandler*, 218

F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   *Strickland*, 466 U.S. at 694.   "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).   For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory

allegations of ineffective assistance are insufficient to satisfy the *Strickland*

test.    *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34

(11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir.

2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson*

*v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between."    *Chandler*, 218 F.3d at

1313.    This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted.    *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d

1177, 1180 (11th Cir. 2000).    "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'"    *Dingle*, 480 F.3d at 1099 (quoting *Adams*

*v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit

has framed the question as not whether counsel was inadequate, but rather

whether counsel's performance was so manifestly ineffective that "defeat

was snatched from the hands of probable victory."   *United States v.*

*Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the

standard is framed, under the prevailing case law it is abundantly clear that

a moving defendant has a high hurdle to overcome to establish a violation

of his constitutional rights based on his attorney's performance.   A

defendant's belief that a certain course of action that counsel failed to take

might have helped his case does not direct a finding that counsel was

*constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and

records conclusively show that the prisoner is entitled to no relief."   *See* 28

U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518

F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective

assistance of counsel warrants an evidentiary hearing.   *Gordon*, 518 F.3d

at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).

To be entitled to a hearing, a defendant must allege facts that, if true, would

prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d

1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims,

conclusory allegations unsupported by specifics, or contentions that are

wholly unsupported by the record.    *See Winthrop–Redin v. United States*,

767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need

not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon

unsupported generalizations") (internal quotation marks omitted); *Peoples*

*v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that

amount to nothing more than conclusory allegations do not warrant a

hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

### B. Petitioner's Ground One

Petitioner's lone ground for relief is that trial counsel was

constitutionally ineffective for failing to obtain and present at trial

documentation that supported his version of events. Petitioner's version of

the events was that he was struggling financially and was not involved in

the distribution of drugs.

On January 18, 2007, Panama City Police Officer Michael Brewer

stopped a car carrying two African American men and a child for having an improper license plate.   (ECF No. 70 at 22-24; ECF No. 52, PSR ¶ 9.) The occupants advised that the vehicle had been rented and Officer Brewer determined that neither the driver, Martin Moore, nor the passenger Marlin Jones, was authorized to operate the vehicle.   Budget rental agency requested the return of its property.   In removing the personal effects of Moore and Jones from the vehicle, Officer Brewer discovered a gallon-sized Ziplock bag containing approximately a kilogram of powder cocaine secreted in a quarter panel of the car.   Moore and Jones were taken into custody and the investigation was turned over to the Drug Enforcement Administration.   (ECF No. 70 at 22-27.)

Navorias Sapp was also arrested on the same date after he kept calling Moore and Jones' cell phones during the traffic stop. When officers contacted Sapp at a local motel, officers detected the odor of marijuana emanating from the room.   Law enforcement recovered marijuana, cocaine and cocaine base in Sapp's room.   (ECF No. 52, PSR ¶10.)

Law enforcement executed a search warrant at the Springfield residence of Victor Pryor, where Jones and his wife had been residing.

(ECF No. 52, PSR ¶ 11.)    Officers discovered cocaine base, marijuana, scales and baggies and three loaded firearms.    Jones told law enforcement that he and Reginald Essix had come to Panama City to sell drugs.    (ECF No. 52, PSR ¶ 12.)    Although they started selling ecstasy or MDMA, they soon began to sell crack cocaine because of greater profits. The men used a number of different sources, but eventually connected with Essix' cousin "Shaun," a/k/a "Bleed," who lived in Atlanta, and who offered to sell cocaine cheaper than the competition.    This individual was the Petitioner.

Moore and Mitchell Jackson transported drugs from Atlanta to Panama City and assisted with distribution.    (ECF No. 52, PSR ¶ 14.) Sapp traveled from Pompano Beach to help with distribution.    Petitioner instructed Jones and Essix over the phone how to cook the cocaine into crack.

On the night of Jones' arrest, he identified Petitioner as their largest supplier, pointing out Petitioner's telephone number in several of the telephones he possessed.    (ECF No. 52, PSR ¶ 15.)    Petitioner's number likewise appeared in one of Moore's telephones, and toll records showed

frequent contact between Petitioner's number and numbers belonging to Jones, Essix and Mitchell Jackson.    Although Jackson had ten calls from Petitioner's number between January 18, 2007 and January 22, 2007, service on the prepaid cellular number was terminated and law enforcement was unable to obtain subscriber information.    Jones also was able to describe to law enforcement how to get to Petitioner's residence in Atlanta.   (ECF No. 52, PSR ¶ 16.)

Jackson went into hiding after learning of the arrests.    (ECF No. 52, PSR ¶ 17.)   About a month later, Petitioner traveled to Panama City and spoke to Jackson about the arrests and concerns that the men were talking to law enforcement.    After Jackson was arrested he separately admitted making more than five trips to Georgia for Jones and Essix, and meeting with Petitioner on several of these trips.   He stated that he also met with Petitioner when Petitioner came to Panama City to deliver cocaine.   The PSR reflects that the post-arrest statements of Jackson, Jones and Essix about the conspiracy were consistent.   (ECF No. 52, PSR ¶¶ 17, 18).

Jones, Moore, Sapp, Jackson and Essix were all indicted on federal drug charges and all expressed a desire to cooperate against Petitioner,

their drug supplier.    Jones, Sapp, Jackson and Essix all testified at Petitioner's trial about various aspects of the conspiracy.

Petitioner also testified in his own behalf at trial.    (ECF No. 71 at 243-266.)[1]    He admitted that he had been placed on probation in July of 2006 for a drug arrest and noted that he successfully completed probation in December of 2008 without becoming aware that there was a warrant for his arrest in Panama City.    He said that he was selling only marijuana, not cocaine, when he was arrested in May of 2012.

In contrast to the testimony of the other witnesses, Petitioner denied traveling to Panama City to sell marijuana, or that he had been to Panama City.    Petitioner testified that he was trying to make money in Atlanta by getting his rap music played in various clubs.    He recalled that it was in a club named Pin Ups where he met Jackson, Jones and Essix, who were in the company of Petitioner's uncle Robert Lee Lamar.    Petitioner testified that he also saw the men at another club, but he denied involvement in the cocaine business with Jones, Jackson and Essix, or bringing any cocaine to Panama City.    Petitioner noted that some of his legal troubles stemmed

---

[1] Page references are to sequential pages in the trial transcript, rather than to those assigned by the court's electronic docketing system.

Case Nos.: 5:08cr40/RH/GRJ; 5:15cv56/RH/GRJ

from the fact that a man who grew up across the street from him, Leonard

Holloway, was using Petitioner's name and birthday when Holloway got into

trouble.   Petitioner had been arrested three times for crimes Holloway had

committed, but he always got the situation resolved.   Petitioner denied

having made any money from selling cocaine since 2006 (the time frame of

the alleged conspiracy) and maintained that he neither used cocaine nor

knew how to convert cocaine into crack.

The defense called three other witnesses at trial:   Petitioner's

mother, Teresa F. Lamar, a friend, Larry Terone Hammock, and

Shayolanda Middlebrooks, who is the mother of Petitioner's daughter.

Each of them testified, among other things, about Petitioner's financial

situation and the fact that he never appeared to have much money.   (ECF

No. 72 at 295-322.)

Petitioner asserts in his motion that after discussing his case with

counsel, he settled on a defense that would show the jury that his lifestyle

and financial situation was contrary to the free-spending playboy lifestyle

the alleged co-conspirators claimed that he lived.   (ECF No. 86 at 2-3.)

Petitioner states that he relied on counsel to develop this defense.   He

notes that at the time in question he and his brother were living in a home that had been foreclosed because Petitioner and his brother were unable to come up with the $500 each to make the mortgage payments, but that counsel did not obtain any bank records to support this.

Petitioner also claims that counsel should have obtained documentation that would have proven that the mother of his child was making the payments on his Dodge Magnum.   (ECF No. 86 at 3).   He did not say what this proof might have been, and Ms. Middlebrooks offered testimony on this issue.

Around the time of his trial, Petitioner signed two powers of attorney giving his counsel access to his files so counsel could obtain documents and financial records, but, in his words, counsel did nothing.   Petitioner believes that the lack of physical evidence to support his version of events vis-a-vis the picture presented by his co-defendants resulted in his conviction.   He maintains that there is a reasonable probability that had counsel presented the unspecified documents and financial statements he requested counsel to present, the outcome of the trial would have been different.

In its response, the Government maintains that Petitioner has failed to carry his burden of showing prejudice because he has failed to describe the evidence he believes would have helped his case.[2]  The Government posits that common sense would dictate that an individual claiming that his attorney failed to make a reasonable search for helpful evidence must tell the court what evidence would have been found and how it would have been helpful, and absent such information, Petitioner cannot establish ineffective assistance of counsel under *Strickland*.

Petitioner's motion reflects that he wanted documents and records to show his dire financial situation, and to corroborate the testimony to this effect at trial.   Financial success is not required to prove the existence of a drug conspiracy.   The Government says that Petitioner testified to moderate financial success in 2006 while the conspiracy was ongoing, buying a $110,000 house and driving a $19,000 Dodge Magnum.   (ECF No. 71 at 267-68.)   It was after Petitioner's drug customers were arrested in January of 2007 that he lost the house.   Additionally, any profits

---

[2] The Government referenced an affidavit that was being drafted for former counsel, Mr. Smith, to execute.   (ECF No. 90 at 8.) Counsel's affidavit, dated August 2, 2017, was filed on August 3, 2017. The contents of the affidavit add nothing to the analysis of Petitioner's claim.

Case Nos.: 5:08cr40/RH/GRJ; 5:15cv56/RH/GRJ

Petitioner made throughout the course of the conspiracy were likely offset by several factors including:   he offered what appeared to be a significant discount on the price of a kilogram of cocaine to his cousin, Essix; he fronted cocaine to his customers and thus lost money when his customers were arrested; he had become sloppy and had stopped checking the quality of the drugs such that he had been stuck with some "bad dope;" and he was "getting shorted."   (ECF No. 71 at 192, 196, 201, 202, 208.)   The Government notes that it never contested that Petitioner was in poor financial straits by the end of 2007.   Therefore, any documentary evidence supporting this fact would not have added to Petitioner's case.   Also, the record reflects that Petitioner testified that he had not filed tax returns in 2006 or 2007, and thus tax records pertaining to his financial status would not have been available.   (ECF No. 71 at 271-272, 284).

Two years after the deadline for filing a reply, Petitioner submitted---without any additional explanation for either the documents or the reason for the delay---documents he "believed would support his version of events."   (ECF No. 94.)   The documents include a May 17, 2016 copy of Petitioner's TransUnion credit report.   The only adverse account listed on

this report appears to be an automobile loan, originally opened for $4,951 that had a high balance of $10,595 between November of 2012 and March of 2015.   (ECF No. 94 at 4.)

The next items, referenced in Petitioner's supplemental filing are multiple documents pertaining to the real property located at 5056 Springtree Court, Lithonia, Georgia, 30058, which appear to show that Petitioner had failed to pay the mortgage note, and that the property had been sold at auction.   (ECF No. 94 at 8-16.)

Last is a copy of a May 14, 2015 printout from the Georgia Department of Corrections reflecting that Leonard Maynard Holloway had used the name Christopher Lamar as one of his aliases.   (ECF No. 94 at 17-19.)   Even if the court were to consider these documents as timely filed, there is no reasonable argument to support Petitioner's position that the introduction of these documents would have altered the outcome of the proceedings. As such, Petitioner has not carried his burden of demonstrating that counsel was constitutionally ineffective under *Strickland.*

## III. Conclusion

For all of the foregoing reasons, the court concludes that Petitioner

has not shown that he is entitled to § 2255 relief. Nor has he shown that an

evidentiary hearing is warranted.   Therefore Petitioner's motion should be

denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides

that "[t]he district court must issue or deny a certificate of appealability when

it enters a final order adverse to the applicant," and if a certificate is issued

"the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability.   Rule 11(b), §

2255 Rules.

After review of the record, the court finds no substantial showing of the

denial of a constitutional right.   § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S.

473, 483–84 (2000) (explaining how to satisfy this showing) (citation

omitted).   Therefore, it is also recommended that the court deny a certificate

of appealability in its final order.

Case Nos.: 5:08cr40/RH/GRJ; 5:15cv56/RH/GRJ

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.    The "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" (ECF No. 85) should be **DENIED**.

2.    A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 4th day of August, 2017.


*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A**

Case Nos.: 5:08cr40/RH/GRJ; 5:15cv56/RH/GRJ

copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.